# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

WAYMOND E. WRIGHT,        :

                Petitioner,      :

                             :

      v.                   :      Civ. Act. No. 18-1988-LPS

                             :

ROBERT MAY, Warden, and     :

ATTORNEY GENERAL OF THE    :

STATE OF DELAWARE,         :

                             :

                Respondents.[1]   :

---

## MEMORANDUM OPINION

Waymond E. Wright.  *Pro so* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

March 28, 2022
Wilmington, Delaware

---

[1]Warden Robert May replaced former Warden Dana Metzger, an original party to the case.  *See* Fed. R. Civ. P. 25(d).

**STARK, U.S. Circuit Judge:**

## I.     INTRODUCTION

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Waymond E. Wright ("Petitioner"). (D.I. 3)  The State filed an Answer in Opposition. (D.I. 13)  For the reasons discussed, the Court will dismiss the Petition.

## II.    BACKGROUND

This case stems from Petitioner's two robberies of two different victims on August 18, 2012: Juan Ambrosio and Angel Olivares. (D.I. 14-4 at 23)  The State eventually dropped the charges against Petitioner for the Ambrosio robbery, but continued its prosecution of Petitioner for his role in the robbery of Angel Olivares – which is the focus of this case.  At the time of Petitioner's trial, Angel Olivares was in Mexico. (*Id.*)  The following background pertains to the Olivares robbery.

On August 18, 2012, a woman accosted Olivares as he walked along a path behind apartments in the vicinity of 1511 North DuPont Highway in New Castle, Delaware. (D.I. 13 at 2-3)  As Olivares attempted to get away from the woman, two men joined her and, with aggressive movements, restrained Olivares and took a wallet from his pocket.  The robbery was witnessed by a local storeowner, Carlos Sanchez ("Sanchez"). (*Id.* at 3)  Police were summoned, and Sanchez provided investigators with surveillance video captured by cameras located on the exterior of his store.  The video supported Sanchez's description of the robbery.  Olivares was seen going from the WaWa to the apartments through the shortcut.  The two men and one woman who participated in the crime could be seen in the video footage. (*Id.*)

On November 5, 2012, a New Castle County grand jury indicted Petitioner and his two co-defendants, Steven Huff ("Huff") and Natasha Mahaley ("Mahaley"), for two counts of first degree robbery, two counts of second degree conspiracy, possession of a firearm during the commission of

a felony ("PFDCF"), and possession of a deadly weapon during the commission of a felony

("PDWDCF").  (D.I. 13 at 1)

> [Petitioner], along with co-defendants Mahaley and Huff, began their joint trial on July 9, 2013.  During jury selection, [Petitioner] brought up, for the first time and via oral motion, the immigration status of the State's witnesses including the State's first witness and alleged robbery victim, Juan Ambrosio ("Ambrosio").  Discussion of the issue required significant delays, with the end result being that Ambrosio invoked his Fifth Amendment privilege after the start of his testimony.  His testimony was stricken, separate charges involving an incident against Ambrosio (including a weapons charge) were dropped, and the jury was instructed to disregard his testimony.  At the time, the [Superior] Court stated "there are novel and complex issues presented, so we've had more recesses than ordinarily anyone would like, but I think it's been necessary to have taken the time."
>
> On July 11, 2013, shortly after it became clear Ambrosio would not testify and some of the charges were dropped, Mahaley entered a guilty plea to Conspiracy Second Degree and the State's second witness Carlos Sanchez ("Sanchez") began to testify.  The next day, Huff also entered a guilty plea to Conspiracy Second Degree and Robbery Second Degree.  The jury was instructed not to attribute the delays in trial to [Petitioner]. . . . Both Mahaley and Huff testified for the State.

*State v. Wright*, 2014 WL 4088685, at *1-2 (Del. Super. Ct. Aug. 19, 2014).

The jury convicted Petitioner of second degree robbery and second degree conspiracy with

respect to the robbery of Angel Olivares.  (D.I. 13 at 2)  On September 11, 2015, the Superior Court

sentenced Petitioner as an habitual offender to fourteen years at Level V incarceration for the

second degree robbery, and to two years at Level V incarceration for the second degree criminal

solicitation conviction, suspended for two years at Level IV, suspended after six months for

decreasing levels of supervision.  (D.I. 14-3 at 16-21)  After his conviction, Petitioner's trial counsel

moved for a judgment of acquittal or, alternatively, for a new trial.  *See Wright v. State*, 196 A.3d 413

(Table), 2018 WL 5251911, at *1 (Del. Oct. 19, 2018).  The Superior Court denied the motion, and

2

the Delaware Supreme Court affirmed Petitioner's convictions on direct appeal. *See State Wright v. State*, 143 A.3d 748 (Table), 2016 WL 3453707 (Del. May 23, 2016).

On November 20, 2016, Petitioner filed in the Superior Court a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") followed by an amended Rule 61 motion. (D.I. 14-1 at 16, Entry No. 83; D.I. 14-15 at 174-75)  On March 6, 2018, the Superior Court denied Petitioner's amended Rule 61 motion. *See State v. Wright*, 2018 WL 1215884 (Del. Super. Ct. Mar. 6, 2018).  The Delaware Supreme Court affirmed that decision on October 19, 2018. *See Wright v. State*, 196 A.3d 413 (Table), 2018 WL 5251911 (Del. Oct. 19, 2018).

## III.   GOVERNING LEGAL PRINCIPLES

### A.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

3

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see also Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show

4

"that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" had it been presented with such evidence. *House v. Bell,* 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

**B. Standard of Review**

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).  As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  *See* 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies both to explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV.     DISCUSSION

Petitioner's timely-filed Petition asserts the following seven grounds for relief: (1) trial counsel provided ineffective assistance by failing to impeach a prosecution witness with evidence that was exculpatory and would have demonstrated that the witness' testimony was untruthful; (2) trial counsel provided ineffective assistance by failing to request a cautionary instruction after Petitioner's co-defendants entered guilty pleas mid-trial; (3) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the first of two proffers made by co-defendant Huff because the proffer could have been used to impeach Huff (D.I. 3 at 9); (4) trial counsel provided ineffective assistance by failing to object to the introduction of his co-defendants' plea agreements, which he contends were used as substantive proof of his guilt.; (5) trial counsel was ineffective for failing to impeach co-defendant Mahaley's testimony by using her prior inconsistent and exculpatory

6

statement; (6) trial counsel provided ineffective assistance by failing to impeach co-defendant Huff with Huff's proffer; and (7) appellate counsel provided ineffective assistance by failing to challenge the Superior Court's denial of his motion for judgment of acquittal and his motion for new trial based on insufficient evidence of a conspiracy.

### A. Claims One, Two, Four, Five and Six: Ineffective Assistance of Trial Counsel

Petitioner presented the ineffective assistance of trial counsel arguments in Claims One, Two, Four, Five and Six to the Superior Court in his Rule 61 motion, which denied the Claims as meritless. *See Wright*, 2018 WL 1215884, at *2-3. The Delaware Supreme Court affirmed the Superior Court's decision on post-conviction appeal. *See Wright*, 2018 WL 5251911, at *1. Therefore, Claims One, Two, Four, Five, and Six will only warrant relief if the Delaware state court decisions were either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established federal law governing ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland*, 466 U.S. at 698.

7

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Here, the Delaware state court decisions were not contrary to *Strickland* because they correctly identified the *Strickland* standard applicable to Claims One, Two, Four, Five and Six. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court must also determine if the Delaware state courts reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d) inquiry, the Court must review the Delaware Supreme Court's decision with respect to Petitioner's ineffective assistance of counsel Claims through a "doubly deferential" lens.[2] *See Richter*,

---

[2]As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against

8

562 U.S. at 105. The relevant question when analyzing counsel's performance under the "doubly deferential lens" "is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* In turn, when assessing prejudice under *Strickland,* the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* Finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

The Superior Court provided the following reasoning for denying Claims One, Two, Four, Five, and Six:

> If [Petitioner] fails to demonstrate one of the two *Strickland* prongs, this Court need not address the other prong. Nevertheless, the Court will address both prongs under *Strickland.* First, [Petitioner] has not demonstrated that counsel's representation fell below an objective standard of reasonableness. There is a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. Just because a defendant and attorney disagree as to how a witness was questioned does not mean that the attorney's conduct did not fall within this range and that the attorney did not exercise sound trial strategy. Furthermore, the Delaware Supreme Court has held that "when the determination of facts turns on a question of credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, those findings of the trier of fact will be approved upon review, and the reviewing court will not substitute its opinion for that of the trier of fact . . . a verdict will not be set aside because it was based on conflicting testimony." In addition, this Court stated in [ruling on Petitioner's] Motion for Judgment of Acquittal that ". . . inconsistencies were properly resolved by the jury and the facts of this case fail to rise to the 'rare case' contemplated when awarding a judgment of acquittal."

the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter,* 562 U.S. at 105 (internal citations omitted).

9

The facts of this case at trial were decided by the jury, including any inconsistencies in the witnesses' statements. The jury and this Court, in its August 19, 2014 denial of [Petitioner's] Motion for Judgment of Acquittal and New Trial, found that there was sufficient evidence to convict [Petitioner]. Furthermore, Mr. Koyste [trial counsel] and Ms. Reynolds [appellate counsel] supplied affidavits, which supported their decisions at trial. Mr. Koyste stated that he did not introduce certain evidence "based on a strategic decision" as certain evidence would have been harmful to the defense. Ms. Reynolds stated that "upon careful review and analysis of the trial record in this case, I arrived at the conclusion that such argument had no merit, and I could not ethically advocate that argument on appeal." [Petitioner] has not satisfied the *Strickland* standard.

*Wright*, 2018 WL 1215884, at *2–3 (cleaned up).

### 1. Claim One: Trial counsel's failure to impeach witness with prior recorded statement

In Claim One, Petitioner contends that trial counsel was ineffective for failing to impeach a prosecution witness with the witness' prior recorded statement. Petitioner does not identify the witness, the testimony, or the portion of the witness' prior statement he believes constituted substantive exculpatory evidence and/or could have been used to impeach the witness. After reviewing the record of Petitioner's Rule 61 proceeding, it appears that the witness is the store owner, Sanchez, and the relevant portion of Sanchez's prior statement is the statement Sanchez gave to a defense investigator describing Petitioner's actions during the robbery. In his Rule 61 proceeding, Petitioner argued that Sanchez's prior statement provided inconsistent yet exculpatory evidence because Sanchez stated he saw the "white female grab and then reach into [the victim's] pockets and remove his wallet." (D.I. 14-17 at 122) Petitioner viewed Sanchez's statement as supporting Petitioner's theory that he (Petitioner) was acting as a good Samaritan by trying to "help" the robbery victim. (*See* D.I. 14-17 at 134) Trial counsel's Rule 61 affidavit, however, asserts that trial counsel did not view Sanchez's statement in the same way. Notably, trial counsel explains that

10

he made the strategic decision not to use Sanchez's interview because "the statements of Mr. Sanchez would have been detrimental to the defense" and "would have added to the strength of the State's case." (D.I. 14-15 at 126, 128) Trial counsel interpreted Sanchez's prior statement as indicating that Petitioner was "helping" his co-defendant Huff commit the robbery, and not acting as a good Samaritan, which would have been hurtful to Petitioner's defense. (D.I. 14-15 at 128) In fact, on the transcript of Sanchez's statement to the investigator, trial counsel wrote the word "BAD" next to the portion of the statement in question. (D.I. 14-17 at 134-35)

After reviewing the record and trial counsel's Rule 61 affidavit, the Superior Court determined that Petitioner did not overcome *Strickland*'s strong presumption that "counsel's conduct fell within a wide range of reasonable professional assistance." *Wright*, 2018 WL 1215884, at *2. The Superior Court explained that, "[j]ust because a defendant and an attorney disagree as to how a witness was questioned does not mean that the attorney's conduct did not fall within this range and that the attorney did not exercise sound trial strategy." *Id.* The Superior Court further held that Petitioner failed to "adequately substantiate any allegation of actual prejudice," as required by *Strickland*. *Id.* at * 3. When affirming the Superior Court's denial of Claim One, the Delaware Supreme Court reviewed the state court record and concluded that trial counsel's decision to forego admitting Sanchez's prior statement was neither deficient nor prejudicial. *See Wright*, 2018 WL 5251911, at *1.

The record supports the Delaware state court conclusions. Petitioner admitted that he was at the scene, the videotape evidence corroborated Sanchez's testimony, and the testimony provided by Huff and Mahaley was consistent with the videotape evidence and Sanchez's testimony. Consequently, the Court concludes that reasonable jurists could agree that trial counsel did not perform deficiently by not admitting the statement Sanchez gave to the defense investigator. *See*

11

*Richter*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

In addition, Petitioner has failed to establish prejudice, because he has not demonstrated a reasonable probability that the result of his trial would have been different but for trial counsel's failure to introduce Sanchez's prior statement. Accordingly, the Court concludes that the Delaware state courts' rejection of Claim One was not unreasonable under the doubly deferential lens of AEDPA and *Strickland*.

### 2. Claim Two: Trial counsel's failure to seek a cautionary instruction regarding Huff and Mahaley's guilty pleas

In Claim Two, Petitioner contends that trial counsel was ineffective for failing request an additional cautionary instruction regarding Huff's and Mahaley's guilty pleas, which occurred mid-trial. Petitioner presented this same argument in his Rule 61 motion, stating that trial counsel should have requested "an instruction to the jury not to draw [an] improper inference from the guilty pleas that the remaining defendant is also guilty." (D.I. 14-17 at 125) Relying on trial counsel's Rule 61 affidavit and its prior reasons for denying Petitioner's motions for judgment of acquittal and new trial, the Superior Court concluded that trial counsel's failure to seek a cautionary instruction did not fall below an objective standard of reasonableness and did not prejudice Petitioner. The Delaware Supreme Court affirmed that decision, holding that the Superior Court properly considered all of Petitioner's ineffective assistance of counsel claims under *Strickland* and determined that the claims were without merit.

After reviewing the record, the Court concludes that the Delaware state courts reasonably applied *Strickland* in denying Claim Two. Although trial counsel did not seek an additional

cautionary jury instruction, the modified *Bland* instruction[3] on accomplice testimony that the

Superior Court actually provided to the jury included cautionary language, as indicated by the

highlighted text in the following excerpt:

> A portion of the evidence presented by the State is the testimony of admitted participants in the crime with which this defendant is charged. For obvious reasons, the testimony of an alleged accomplice should be examined by you with *more care and caution than the testimony of a witness who did not participate in the crime charged.* This rule becomes particularly important when there is nothing in the evidence, direct or circumstantial, to corroborate the alleged accomplices' accusation that this defendant participated in the crime.
>
> Without such corroboration, you should not find the defendant guilty unless, after careful examination of the alleged accomplices' testimony, you are satisfied beyond a reasonable doubt that it is true and that you may safely rely upon it. Of course, if you are so satisfied, you would be justified in relying upon it, despite the lack of corroboration, and in finding the defendants guilty.

(D.I. 14-4 at 286-87) (emphasis added)  Additionally, after each co-defendant pled guilty during trial,

the Superior Court instructed the jury that the co-defendant had resolved his or her charges and he

or she was no longer on trial.  (D.I. 14-14 at 72; D.I. 14-15 at 4)  Immediately after informing the

jury that Huff was no longer on trial, the Superior Court also instructed the jury that any delay

related to resolving the co-defendants' cases should not be attributed to Petitioner.  (D.I. 14-15 at 4)

---

[3]In *Bland v. State*, 263 A.2d 286 (Del. 1970), the Delaware Supreme Court crafted a model jury instruction for cases "reliant on the uncorroborated testimony of accomplices." *McMullen v. State*, 253 A.3d 107, 120 (Del. 2021).  In *Brooks v. State*, 40 A.3d 346, 350 (Del. 2012), the Delaware Supreme Court "held that a trial judge who fails to give an instruction about accomplice testimony commits plain error," and stated that "trial judges must give a modified version of the instruction from *Bland v. State* whenever the State offers accomplice testimony against the accused." *McMullen*, 253 A.3d at 120.

Moreover, when Huff and Mahaley testified against Petitioner, trial counsel exposed their biases with extensive cross-examination about their plea negotiations and extremely favorable pleas. The transcript of trial counsel's closing shows that he vigorously argued the content of the *Bland* instruction and its requirement that the jury view the testimony of admitted participants with caution. (D.I. 14-4 at 274-75)  This record supports trial counsel's assertion in his Rule 61 affidavit that he "properly addressed" the issue of the co-defendants' guilty pleas "with a *Bland* jury instruction which was presented to the jury during the jury charge phase of the trial." (D.I. 14-17 at 158)

After considering the totality of the evidence at trial, the Superior Court's modified *Bland* instruction, Mahaley and Huff's testimony, trial counsel's cross-examination of Mahaley and Huff, and trial counsel's ability to argue the issues of credibility and conflicts to the jury, the Court concludes that Petitioner has failed to show a reasonable probability that the result of the proceeding would have been different if the jury had been provided with an additional instruction not to infer that Petitioner was guilty based on Huff's and Mahaley's guilty pleas.  In short, since the jury had sufficient evidence to assess Huff's and Mahaley's credibility, the Delaware state court rulings were not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  Accordingly, the Court will deny Claim Two for failing to satisfy § 2254(d)(1).

### 3.  Claim Four: Trial counsel did not object to introduction of Huff's and Mahaley's plea agreements

In Claim Four, Petitioner argues that trial counsel provided ineffective assistance by not objecting to the introduction of his co-defendants' plea agreements, which he contends were used as substantive proof of his guilt.  The Delaware state courts rejected this Claim under both prongs of

14

*Strickland.* The Delaware state courts did not unreasonably apply *Strickland* when denying Claim Four.

In his supplemental Rule 61 affidavit, trial counsel asserts that he strategically decided to refrain from objecting to Huff's and Mahaley's plea agreements. (D.I. 14-17 at 154) He explains that the introduction of the plea agreements was beneficial to the defense as "impeachment material or information, as the plea agreement of a Co-Defendant is used by a defense attorney to show bias on the part of an individual who receives a benefit by pleading guilty to less offenses than what is charged, or is able to receive favorable treatment when sentence[ed]." (D.I. 14-17 at 154)

The record reveals that trial counsel's strategic decision was reasonable. At sidebar, trial counsel explained, "I believe I can cross-examine with the rejected plea offer . . . ." (D.I. 14-15 at 44) The State objected, and the Superior Court overruled, finding:

> I think it goes to bias to some extent. I understand how plea negotiations get implicated, but I think that is trumped by the bias issue involving the severity of the original plea offer; not that it wasn't necessarily appropriate, but it was heavily negotiated.

(*Id.*) Trial counsel then questioned Huff and Mahaley about the progression of their plea negotiations, their potential sentences before the pleas, their sentences as a result of the pleas, and the benefit they received by testifying against Petitioner. (D.I. 14-15 at 47-50, 70-71) The bias highlighted by trial counsel – as shown by the lenient sentencing recommendations in the plea agreements – outweighed any substantive evidence the plea agreements might be considered to constitute. Accordingly, the Court concludes that the Delaware state courts reasonably applied *Strickland* when holding that trial counsel's failure to object to the introduction of Huff's and Mahaley's plea agreements did not amount to constitutionally ineffective assistance.

15

### 4. Claims Five and Six: Failure to impeach co-defendants with guilty pleas

In Claim Five, Petitioner asserts trial counsel should have impeached co-defendant Mahaley with her prior statements because they were inconsistent and exculpatory. In Claim Six, Petitioner contends that trial counsel should have impeached co-defendant Huff with Huff's proffer. Petitioner, however, does not identify the inconsistencies or exculpatory nature of Mahaley's prior statements. As for Petitioner's contention regarding Huff's proffer, Petitioner appears to believe that Huff made two proffers – one on Thursday July 11, 2013 and one on Friday July 12, 2013 – and that Huff's proffer on Thursday July 11, 2013 caused the State to withdraw a plea offer it had extended to Petitioner at an earlier time. Petitioner is mistaken. The record demonstrates that Huff only made one proffer – on Friday July 12, 2013. (D.I. 14-2 at 16-17; D.I. 14-15 at 59) As the Court explains more thoroughly in its subsequent discussion of Claim Three, it was Mahaley, not Huff, who made the proffer on Thursday July 11, 2013 that caused the State to withdraw its plea offer. *See infra* at Section IV.C.

To reiterate, the record reveals that trial counsel thoroughly attacked the credibility of both co-defendants on cross-examination, including their prior crimes of dishonesty. Based on the totality of the record, and given Petitioner's failure to substantiate his instant assertions, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for trial counsel's failure to impeach his co-defendants with unidentified inconsistencies and Huff's non-existent second proffer. Accordingly, the Court will deny Claims Five and Six for failing to satisfy § 2254(d).

### B. Claim Seven: Appellate Counsel Provided Ineffective Assistance

Appellate counsel presented one argument on direct appeal: that the delays in the trial relating to Huff's and Mahaley's pleas prejudiced Petitioner. In Claim Seven, Petitioner contends

16

that appellate counsel provided ineffective assistance by failing to argue on direct appeal that there was insufficient evidence to support his conspiracy conviction. When rejecting the same ineffective assistance of appellate counsel argument in Petitioner's Rule 61 proceeding, the Superior Court explicitly considered the conclusion it reached when denying Petitioner's motions for judgment of acquittal and new trial, namely, that there was sufficient evidence to convict Petitioner. The Delaware Supreme Court affirmed the Superior Court's Rule 61 denial on post-conviction appeal, holding that the Superior Court properly determined the argument was without merit under the *Strickland* standard.

Claims of ineffective assistance of appellate counsel are evaluated under the same *Strickland* standard applicable to claims alleging the ineffective assistance of trial counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). An attorney's decision about which issues to raise on appeal is strategic, and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000). As a general rule, the presumption of effective assistance of appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented." *Smith*, 528 U.S. at 285. In order to establish prejudice, a petitioner must show a reasonable likelihood that the court would have resolved the case differently on appeal if not for counsel's deficiencies. *See United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000).

The Superior Court's rejection of Petitioner's instant ineffective assistance of appellate counsel argument was based on the conclusion it had reached when denying Petitioner's motions for judgment of acquittal and new trial, namely, that there was sufficient evidence to convict Petitioner. The Delaware Supreme Court affirmed the Superior Court's Rule 61 denial on post-conviction

17

appeal, holding that the Superior Court properly determined the argument was without merit under the *Strickland* standard.

Importantly, when denying Petitioner's motion for a new trial/judgment of acquittal, the Superior Court applied the same standard for reviewing the sufficiency of the evidence that the Delaware Supreme Court would have applied on direct appeal.[4] *See Wright*, 2014 WL 4088685, at *4. Given this record, Petitioner cannot demonstrate that appellate counsel's decision to forego pursuing a sufficiency of the evidence claim on direct appeal fell below an objective standard of reasonableness or that there is a reasonable probability that the outcome of his appeal would have been different but for appellate counsel's decision. Accordingly, the Court will deny Claim Seven for failing to satisfy § 2254(d).

### C. Claim Three: *Brady v. Maryland* Violation

In Claim Three, Petitioner contends that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding the "first proffer made by co-defendant which could've been used to impeach co-defendant." (D.I. 3 at 9) The Delaware Supreme Court denied Petitioner's *Brady* argument as procedurally barred and substantively without merit. *See Wright*, 2018 WL 5251911, at *2. In this proceeding, the State does not address the issue of any procedural bar and, instead, argues that the instant *Brady* argument lacks merit. Given the State's implicit waiver of Petitioner's procedural default of Claim Three, the Court will review the Delaware state courts' denial of Claim Three under § 2254(d)(1).

_____

[4]The standard of review applicable to sufficiency of the evidence claims is articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). When setting forth the standard of review applicable to Petitioner's motion for judgment of acquittal, the Superior Court cited to *State v. Owens*, 2010 WL 2892701, at *4 (Del. Super. Ct. July 16, 2010) which, in turn, cites to *Jackson v. Virginia*.

In *Brady v. Maryland*, 373 U.S. at 87, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." This "duty to disclose such evidence is applicable even though there has been no request by the accused," and includes "impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999). "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* "In order to comply with *Brady*, therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Id.* at 281 (cleaned up). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.

The premise of the instant *Brady* Claim appears to be Petitioner's belief that Huff made two proffers during the plea process, and that one of the proffers could have been used to impeach Huff. Petitioner is mistaken about Huff making two proffers. The origin of Petitioner's mistaken belief is apparent upon review of his Rule 61 motion and the page of the trial transcript to which Petitioner cites[5] to support Claim Three. The transcript page cited by Petitioner actually contains the explanation provided by Huff's counsel and the State to the Superior Court about an overlap in timing between Mahaley's proffer and an extension of a plea offer to Huff. More specifically, the State explained:

---

[5]Petitioner cites "transcript 7-11-13 at 58." (D.I. 3 at 9)

> For the sake of making a record, there was – *while [Mahaley's] proffer was still occurring, there was a subsequent plea offer extended to Mr. Huff. It's my understanding that he rejected that plea offer. That rejection was communicated to me.*
>
> However, at which point I ultimately indicated that once I heard the general synopsis of what that proffer was, that there was no longer a plea offer on the table for Mr. Huff, it's my understanding that subsequently Mr. Huff called Mr. Witherell in to further discuss the matter after the plea had already been withdrawn by the State. And there is a – well, I'll let Mr. Witherell speak.

(D.I. 14-14 at 71) (emphasis added)  Huff's counsel, Mr. Witherell, then stated:

> Judge, in the interim, while Ms. Mahaley was resolving her case, I continued to have negotiations with the State to advance Mr. Huff's position. Ultimately, the State had offered him a robbery second degree with a recommendation/agreement of a two-year Level V sentence followed by probation.
>
> Again, that's up to the Court to make their discretion. It would be subject to the statutory maximum, but that would be the State's position.
>
> I communicated that to Mr. Huff, and consistent with all of the prior pleas that I've communicated to him, I was met with no plea. And he would stand up and walk to the back of the room as if to leave.
>
> Prior to Ms. Mahaley coming into the courtroom or simultaneous to, I received a call or a note from one of the guards that my client wanted to speak with me, which I tell you is the first time that my client has actually summoned me to actually speak with me regarding a plea.
>
> And when I entered the room – as I was leaving here, the State mentioned to me that, Mr. Witherell, there's no more pleas. So I communicated that. . . . And the State at this point in time has elected not to stand by their offer of two years.

(D.I. 14-14 at 71)

In his Rule 61 brief on post-conviction appeal, Petitioner describes the foregoing events as follows:

20

> [Petitioner] avers, [o]n July 11, 2013, State's attorney Barzilia Axelrod, during recess of trial where co-defendant Steven Huff was on trial with him, Mr. Huff's attorney Mr. Witherell discussed with Mr. Huff his first synopsis proffer.  (Trial Transcript Pg. 58, Lines 13-23; Pg. 59, Lines 1-23; Pg. 60, Line 16)  This clearly reflects and establishes that the first proffer was still occurring and that there w[ere] subsequent plea offers extended to Mr. Huff.  Mr. Axelrod ultimately indicated that once he heard the general synopsis of what the proffer was, [there was] no longer a plea offer on the table for Mr. Huff.
>
> **_[Petitioner] avers that the synopsis of first proffer State witness Mr. Huff exonerates him, that was the basis for Mr. Axelrod taking the plea offer off the table for Mr. Huff.  Mr. Huff became [the State's star witness against Petitioner] in the middle of trial._**

(D.I. 14-13 at 28) (emphasis added)  Comparing the highlighted portion of Petitioner's Rule 61 appeal argument with the highlighted excerpt from the trial transcript demonstrates that Petitioner mistakenly believes the proffer that caused the State to withdraw its plea offer on July 11, 2013 was Huff's proffer when, in fact, it was Mahaley's proffer.  Indeed, the rest of the trial transcript indicates that Huff only made one proffer – on Friday July 12, 2013 – which was the day he entered his guilty plea.  (D.I. 14-15 at 59)  Thus, to the extent Claim Three focuses on a non-existent additional proffer by Huff, the Court denies the Claim as factually baseless.

Nevertheless, after reviewing Claim Three in context with the argument Petitioner raised in his Rule 61 proceeding, the Court perceives Petitioner as potentially arguing that the State violated *Brady v. Maryland* by withholding information concerning the plea offer.  The Delaware Supreme Court's decision on post-conviction appeal also interprets Claim Three in this manner:

> To resolve any concern about [Petitioner's] exculpatory evidence claim, which was not explicitly addressed in the Superior Court's order, we have considered the claim on appeal and concluded that it is procedurally barred and substantively without merit.  The claim is procedurally barred because [Petitioner] did not – and cannot – establish cause for failing to raise the claim earlier or prejudice from a violation of his rights.  The claim is without merit because [Petitioner] did not demonstrate that the purported exculpatory evidence –

21

> *consisting of the contents of a prior plea offer that was rejected by Huff* – was favorable to [Petitioner's] defense.

*Wright*, 2018 WL 5251911 at *2 (emphasis added).

To the extent the Court should view Huff's rejected plea offer on July 11, 2013 as the focus of Petitioner's *Brady v. Maryland* argument, the Court still concludes that his argument lacks merit. As the Delaware Supreme Court held, Petitioner has not demonstrated that the rejected plea offer contained impeaching or exculpatory evidence favorable to his defense. Accordingly, the Court concludes that the Delaware Supreme Court reasonably applied *Brady* in denying Claim Three.

### D. Motion to Amend

During the pendency of this proceeding, Petitioner filed a Motion to Amend his Petition with a new claim alleging that he was denied his right to confront his accuser as guaranteed by *Crawford v. Washington*, 541 U.S. 36 (2004). (D.I. 18) Amendments to habeas petitions are governed by Federal Rule of Civil Procedure 15. *See United States v. Duffus*, 174 F.3d 333, 336 (3d Cir. 1999). Since federal habeas corpus actions are subject to a one-year statute of limitations, a motion to amend a timely filed habeas petition "will be denied where it is filed after that period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of [Rule 15(c)]." *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008). Rule 15(c) permits relation-back of a proposed amendment to a habeas petition when both the pleading and the proposed amendment arise out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(B). In the habeas context, an amendment relates back to a habeas petition under Rule 15(c) "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005). A claim will not relate back, however, to

the extent that it "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.

As explained by the Third Circuit:

> In searching for a common core of operative facts in the two pleadings, courts should remain aware that the touchstone for relation back is fair notice, because Rule 15(c) is premised on the theory that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide. Thus, only where the opposing party is given fair notice of the general fact situation and the legal theory upon which the amending party proceeds will relation back be allowed. For example, we have held that amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction, or occurrence in the preceding pleading fall within Rule 15(c) because the opposing party will have had sufficient notice of the circumstances surrounding the allegations contained in the amendment.

*United States v. Santarelli*, 929 F.3d 95, 101 (3d Cir. 2019) (cleaned up and citations omitted).

A court may also deny leave to amend where the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Middlebrook v. Carroll*, 470 F. Supp. 2d 411, 419 (D. Del. 2007), *aff'd*, 293 F. App'x 858 (3d Cir. 2008). An amendment is futile if the proposed pleading could not withstand a motion to dismiss. *See City of Cambridge Re. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 278 (3d Cir. 2018). Examples of futility in the habeas context include time-barred amendments that do not relate back to the original petition, procedurally barred amendments, and amendments lacking arguable merit. *See Bernard v. United States*, 2019 WL 3719405, at *2 (D.N.J. Aug. 5, 2019) (noting that amending with time-barred claim that does not relate back would be futile); *Hall v. Phelps*, 641 F. Supp. 2d 334, 342 (D. Del. 2009).

In this case, although the Petition is timely, Petitioner filed his Motion to Amend long after the expiration of AEDPA's one-year limitations period. Consequently, Petitioner's Confrontation

Clause Claim is time-barred.  In turn, Petitioner's new proposed claim does not relate back to the original Petition, because it not tied to a common core of operative facts shared with any of the seven Claims in his Petition.  Therefore, the Court will deny Petitioner's Motion to Amend.

## V.    CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VI.    CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing.  An appropriate Order will be entered.